NOT FOR PUBLICATION (Doc. No. 4)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| NHUNG LE PHAN, : | |
| Plaintiff, : | Civil No. 11-0027 (RBK/KMW) |
| v. : | **OPINION** |
| THE L. WARNER COMPANIES, INC., : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

This employment contract dispute comes before the Court on the motion of The L. Warner Companies, Inc. ("Warner" or "Defendant") to dismiss the Amended Complaint of Nhung Le Phan ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6), or for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff alleges that Defendant, her former employer, failed to increase Plaintiff's salary annually as specified in her employment contract. Moreover, Plaintiff claims that Defendant breached the employment contract by failing to allocate to Plaintiff 20% of her Division's annual profit. Because the contract specifies that it is governed by Maryland state law, Plaintiff further alleges that these contract breaches also amount to violations of the Maryland Wage Payment and Collection Law ("MWPCL"). Finally, Plaintiff's Amended Complaint seeks declaratory judgment that, because of Defendant's alleged breaches of contract, the confidentiality, nonsolicitation, and noncompetition clauses of the employment contract are invalid. Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim, or, in the alternative, moves for a grant of

1

summary judgment in its favor.  For the reasons stated below, the Court finds that Plaintiff has raised genuine issues of material fact regarding her breach of contract and Maryland Wage and Payment Collection Law claims, and the Court accordingly denies summary judgment for those claims.  However, the Court grants Defendant's motion to dismiss Plaintiff's request for declaratory relief.

I.      BACKGROUND

Plaintiff began working as the Line Leader in the Voluntary Benefits Division for Defendant's insurance sales company on April 1, 2008,[1] pursuant to an Employment Agreement ("Agreement") she entered into with Defendant on March 28, 2007.  Plaintiff's Brief in Opposition to Motion to Dismiss ("Pl. Br. Opp.") 1, Am. Compl. at ¶ 6.  The Agreement provided that Plaintiff would be employed by Defendant for a period of one year, and that the period of employment would automatically renew annually for another year, unless either party notified the other, at least 45 days in advance of the automatic renewal, of its intent not to renew the Agreement, or unless the Agreement were otherwise terminated.  Defendant's Brief in Support of Its Motion to Dismiss ("Def. Br. Mot. to Dismiss"), Ex. 1(a) ("Agreement") at ¶ 2.  Plaintiff alleges that, according to the Agreement, her salary would be paid according to the following schedule:

| April-December 2007 | $18,750/month |
| January-December 2008 | $20,625/month |
| January-December 2009 | $22,687/month |
| January-December 2010 | $24,956/month |

---

[1] Plaintiff's Brief in Opposition indicates that she "began employment on April 1, 2008"; however, in her Amended Complaint, Plaintiff alleges that employment began on April 1, 2007, and the Agreement itself corroborates the 2007 date.  Compare Pl. Br. Opp. 1 with Am. Compl. at ¶ 8 and Def. Br. Mot. to Dismiss, Ex. 1(a).

Am. Compl. at ¶ 10.  Plaintiff further alleges that her salary was never raised during the time that she was employed by Plaintiff, and she was paid a salary of $18,750 per month for the duration of her 2.5-year employment by Warner.  Am. Compl. at ¶¶ 12, 21.  Defendant admits that Plaintiff's salary was never raised above $18,750 per month.  Def. Br. Mot. to Dismiss, 5.  However, Defendant rejoins, the Agreement indicates that the provisions of Schedule A, where Plaintiff's salary information is set out, are "subject to modification."  Agreement, Ex. A ("Schedule A").  Defendant further argues that Plaintiff's modifiable salary increases were based on projections of revenue that would be gained as a result of Plaintiff's employment, but which were never realized.  Warner Affidavit at ¶ 5.  Defendant maintains that, as allowed in the contract, Plaintiff's salary was modified, and "the parties . . . mutually consented to the modification of Plaintiff's compensation schedule through their actions and acquiescence, for over a two year period."  Def. Br. Mot. to Dismiss 9.

Plaintiff, on the other hand, argues that she "never agreed to forego her scheduled salary increases in the absence of an agreeable deferred compensation arrangement."  Pl. Br. Opp. 3.  Rather, she explains that Defendant "floated various ideas about a deferred compensation arrangement, which he called 'synthetic equity,' that would have given Ms. Phan the economic equivalent of a 20 percent stake in the equity value of the Voluntary Benefits Division."  Id.  In this way, Plaintiff contends, Defendant "continued to string her along."  Id.  When, eventually, no deferred compensation agreement materialized, Plaintiff argues, she tendered her resignation.  Id.

The Agreement further provided for Phan to be paid "20% of the Net Profits from the Voluntary Benefits Division on a semi-annual basis."  Schedule A.  Plaintiff alleges that, "[u]pon information and belief, the Voluntary Benefits Division was profitable during one or more of the

semi-annual periods" during which Plaintiff was employed, and that Defendant therefore breached the Agreement by failing to afford Plaintiff 20% of those profits.  Am. Compl. at ¶¶ 26, 27.  Defendant, however, argues that Plaintiff's Division was not profitable during her tenure at Warner, and that Plaintiff accordingly "was informed that she had not been entitled to any profit distribution because the Division had never generated any net profit."  Warner Affidavit at ¶ 9.

Plaintiff also alleges that she was not reimbursed for business expenses incurred during her employment by Defendant.  Am. Compl. at ¶ 4.

The Agreement is governed by the law of the State of Maryland.  Agreement at ¶ 21.  Plaintiff's Amended Complaint alleges that, because Defendant withheld salary increases and profit percentages that were due to Plaintiff, Defendant violated the Maryland Wage Payment and Collection Law ("MWPCL").  Am. Compl. at ¶ 31-35.  Defendant responds that the MWPCL applies only to remuneration which is "promised" to an employee, and that, because Plaintiff was never promised the salary and profits "proposed" in Schedule A, the MWPCL does not apply to Phan.

The Agreement also contained a confidentiality clause, which indicated that Plaintiff must execute a Confidentiality and Nondisclosure Agreement that would prohibit Plaintiff from sharing Warner's "Proprietary Information."  Agreement at ¶ 11; Agreement Ex. B ("Confidentiality and Nondisclosure Agreement").  Moreover, the Agreement included a Noncompetition and Nonsolicitation clause that would prevent Plaintiff from sharing "Confidential Information" gleaned as a result of her employment for Defendant.  Agreement at ¶ 12. Plaintiff argues that, because Defendant breached the Agreement, Plaintiff is no longer bound by these provisions.  Defendant counters that Maryland law does not entitle Plaintiff to a release of her contractual obligations.

## II.     PROCEDURAL POSTURE

Defendant filed the instant motion as a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56.  Notice of Motion, Doc. No. 4.  Pursuant to Federal Rule of Civil Procedure 12(d), if the court relies upon matters outside of the pleadings, the motion to dismiss must be converted into a motion for summary judgment.  Fed. R. Civ. P. 12(d) ("If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  In this case, Defendant appended to its motion an Affidavit by Lee W. Warner, as well as an August 10, 2010 email to Plaintiff from Defendant.[2]  Def. Mot. to Dismiss, Exs. 1, 1(b).  Plaintiff appended a Declaration of her own to her response to Defendant's motion.  Phan Decl. Because both parties rely heavily upon these documents in addressing Plaintiff's breach of contract and MWPCL claims, the Court will apply a summary judgment standard to Defendant's motion regarding those claims.  Because an issue of legal sufficiency hovers over Plaintiff's claim for declaratory judgment, and because the parties do not raise factual issues in their dispute over that claim, the Court will apply to its analysis of that claim the standard governing a motion to dismiss.

---

[2] Defendant also appended the Agreement.  Def. Mot. to Dismiss 1(a).  However, the Court does not consider the Agreement to be a "matter[] outside the pleadings" for the purposes of Rule 12(d).  Because this breach of contract action is based on the Agreement, and because Plaintiff "acknowledges the accuracy" of the Defendant's attachment, Pl. Br. Opp. 1 n.1, it would have been proper for the Court to consider it at the pleadings stage.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  Accordingly, if the Agreement had been the only Exhibit appended to Defendant's motion or Plaintiff's response, the Rule 12(d) provision mandating application of a summary judgment standard would not have been implicated.

### III. STANDARD

#### A. Choice of Law

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law.  See Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").  Accordingly, as the Agreement is governed by Maryland law, we apply the substantive law of Maryland to this case.  Agreement at ¶ 21.

#### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

In making this determination, a court must engage in a two-part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to

show that the plaintiff has a "plausible claim for relief." Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

### C. Motion for Summary Judgment[3]

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331 (Brennan, J., dissenting)).  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the

---

[3] The Court notes that Defendant, the movant in this case, has failed to file a Statement of Material Facts Not in Dispute, pursuant to New Jersey Local Rule 56.1(a).  Although this failure constitutes grounds on which to deny Defendant's motion, the Court will consider the merits of the motion in this case, and elects only to admonish Defendant to adhere to the Local Rules that govern this Court.

nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. Appx. 353, 2007 WL 2709661, at *1 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. DISCUSSION

### A. Count One: Breach of Contract

Plaintiff alleges that Defendant breached the Agreement in three ways: (1) by failing to increase Plaintiff's salary as provided in Schedule A; (2) by failing to allocate to Plaintiff 20% of her Division's profits; and (3) by failing to reimburse her for business expenses. Defendant's motion for summary judgment on each of these allegations will be discussed in turn.

#### 1. Plaintiff's Salary

Plaintiff and Defendant agree that, for the duration of Phan's employment with Warner, she earned $18,750.00 per month. They further agree that Schedule A sets out a schedule for

8

monthly increases in Plaintiff's salary, but that Plaintiff never received any salary increases. Finally, the parties agree that the Agreement indicates that it is "Subject to Modification." Their disagreement fundamentally concerns whether or not the Modification provision allowed for unilateral modification of Plaintiff's salary schedule, or, alternatively, whether Plaintiff's continuing to work despite the lack of salary increase constituted consent to the modification proposed by Defendant.

Defendant argues that, because the parties "at no time . . . enter[ed] into a written agreement to modify or otherwise limit *Warner's right to modify* the compensation" listed in Schedule A, Defendant was permitted to modify the contract as he saw fit. Def. Br. Mot. to Dismiss 7 (emphasis in original). Defendant cites no law to support the proposition that the "Subject to Modification" clause of the Agreement would categorically allow for unilateral contract modification without Plaintiff's approval. In fact, Maryland law points in the opposite direction: "A meeting of the minds is required not only to make a contract, but also to abrogate or modify it after it has been made." Vincent v. Palmer, 179 Md. 365, 372 (1941) (citing Whiteside v. United States, 93 U.S. 247 (1876)).

Defendant's other arguments—that "settled Maryland law" permits agreed-upon nonwritten contract modification, and that Plaintiff's conduct manifested consent to Warner's modification of the Agreement, are more persuasive. Id. 8-9. Indeed, Maryland law provides for "subsequent oral modification of a written contract," even where a contract provides "that it shall not be varied except by an agreement in writing," as long as it "appear[s] that the parties understood that this clause was waived"—either "by implication" or "by express agreement." Taylor v. University Nat'l Bank, 263 Md. 59, 63 (1971) (quoting Freeman v. Stanbern Const. Co., 205 Md. 71, 79 (1954)). Such oral modification of a written contract "may be established

9

by a preponderance of the evidence." Id. Furthermore, "the conduct of parties to a contract may be evidence of a subsequent modification of their contract." Taylor, 263 Md. at 94. Defendant argues that Plaintiff had "notice of the modification of her compensation," and accepted that modification by accepting the same salary for two years.

Plaintiff's Memorandum and Declaration raise a genuine issue of material fact as to Plaintiff's acceptance of Defendant's modification to the Agreement. Phan avers that Defendant's "own internal documentation reflected that it was projecting [her] salary expense to include salary increases which were never paid to [her]." Phan Decl. at ¶¶ 24-25. Moreover, and more significantly, Plaintiff's Declaration indicates that, over the course of her employment, beginning shortly after the first salary increase was supposed to come into effect, she expressed her dissatisfaction with the fact that Warner had not provided the agreed-upon wages. Id. at ¶ 11. Plaintiff relates many attempts to work out a "synthetic equity" agreement that would substitute for the salary increases that the contract assured, and Plaintiff assumed in those discussions that Defendant "was operating in good faith" to reach a written agreement regarding the proposed equity benefits. Id. at ¶¶ 11-18. Plaintiff argues that when she "lost confidence in Mr. Warner," she provided Defendant with her resignation. Id. at ¶ 34. Through these sworn allegations, Plaintiff has adequately raised an issue of material fact as to the question of whether or not she assented to Defendant's contract modifications.

    2. <u>Plaintiff's Share of Net Profits</u>

Plaintiff alleges that Schedule A of the Agreement also afforded her "20% of the Net Profits from the Voluntary Benefits Division on a semi-annual basis." Schedule A. Plaintiff further alleges that, although her Division was profitable "during one or more of the semi-annual periods" of her employment with Defendant, Defendant "refused" to pay 20% of the Net Profits

during any of those semi-annual periods.  Am. Compl. at ¶ 26.  Accordingly, Plaintiff claims, Defendant breached that provision of their Agreement.

Defendant contends that "Plaintiff actually did receive her share of 'net profits' pursuant to the terms in Exhibit A because there was no net profit" in Plaintiff's Division.  Def. Br. Mot. to Dismiss, 8.  Warner's affidavit avers this as well, explaining that, "[i]n fact, the Division lost in excess of $500,000 each year of Ms. Phan's employment."  Warner Affidavit at ¶ 9. However, Plaintiff points to the language of Schedule A, which indicates that the Agreement provides for percentage payment "of the Net Profits from the Voluntary Benefits Division on a semi-annual basis."  Schedule A.  Plaintiff interprets this to mean that the Agreement entitled her to any profit generated during any isolated semi-annual period; she contends that it is not based on cumulative profits as measured from the start of Plaintiff's employment, and had argued as much to Defendant in a meeting on the subject.  Phan Decl. at ¶ 22.  Moreover, Plaintiff submits her Division's May 31, 2010 "Scorecard," wherein her salary is listed at $275,000.00 ($22,916.67 per month).  Id. at ¶¶ 25-26.  Plaintiff alleges that at that time, as during all periods of her employment by Defendant, she was being paid $18,750 per month.  Id. at ¶ 26.  This discrepancy between salary as reported on the Division's Scorecard, and the salary received by Phan, suggests that the Scorecard's figures were not accurate, and accordingly raises an issue of fact as to whether or not Plaintiff's Division was, in fact, profitable during her tenure.

3. Reimbursement of Business Expenses Incurred by Plaintiff

Plaintiff asserts that she incurred business expenses of $32.67 and $203.37 on behalf of Defendant, which Defendant never reimbursed.  Am. Compl. at ¶ 23; Phan Decl. at ¶ 36. Plaintiff alleges that this failure to reimburse constitutes a breach of paragraph 8.2 of the Agreement, which provides for "reimbursement for business and professional expenses

11

reasonably related to the business of Employer . . . ." Agreement at ¶ 8.2. Defendant emphasizes that, according to the Agreement, such expenses must be "approved by it in advance." Id. Because Plaintiff's Amended Complaint and Declaration do not allege that such approval was obtained, Defendant claims, Plaintiff has not met her burden of showing breach of the contract provision contained in ¶ 8.2. Def. Reply 8-9.

Defendant did not raise this issue until its Reply, making it impossible for Plaintiff to raise any new facts at this stage that would allow it to meet its burden of demonstrating genuine issues of material fact for trial. Accordingly, the Court regards this issue as not having been included in Defendant's motion for summary judgment. The Court concludes that Plaintiff has properly stated a claim for breach of the ¶ 8.2 provision because it was raised in ¶ 23 of the Amended Complaint, and because Plaintiff's Declaration indicates that she "properly documented [her] expenses in accordance with the company's normal business expense reimbursement policy and practices." Phan Decl. at ¶ 36.

### B. Count Two: Violation of Maryland Wage Payment and Collection Law

Plaintiff has also alleged that, by withholding the contracted-for salary increase, percentage profits, and business expense reimbursement, Defendant has also violated the Maryland Wage Payment and Collection Law. Md. Labor and Employment Code Ann. § 3-501 et seq. The MWPCL creates "an action against [an] employer to recover the unpaid wages" in the event that an employer "fails to pay an employee in accordance with § 3-502 or § 3-505 of this subtitle." Id. at § 3-507.2(a). Section 3-505 provides that an employer will pay an employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Id. at § 3-505(a).

Defendant argues that, under Maryland law, "'wages' include only remuneration which is promised in exchange for the employee's services," and that "all conditions agreed to in advance for earning those wages" must be met before are due. Def. Br. Mot. to Dismiss 10 (citing Whiting-Turner Contractor Co. v. Fitzpatrick, 366 Md. 295, 305 (2001)). As the Maryland Court of Appeals explained in Whiting-Turner, "reading the statute as including a bonus as wages only when it has been promised as part of the compensation for employment is logical and makes good common sense." 366 Md. at 305. However, Defendant's argument that Warner modified the Agreement by not increasing Plaintiff's salary strongly suggests that Plaintiff was, indeed, "promised" that increase in exchange for employment services. (Whether or not the Agreement was legally modified after the contract containing each party's promises was formed is a different matter, and the central subject of dispute in this case.)

Furthermore, the MWPCL defines "wage" as "all compensation that is due to an employee for employment." Md. Labor and Employment Code Ann. § 3-501(c). This includes any bonus, commission, or "other remuneration promised for service" that is "due" to an employee. Id. The compensation that, Plaintiff claims, she is due pursuant to the Agreement with Defendant falls under this definition of "wage." Accordingly, because Plaintiff has raised a genuine issue of material fact as to Defendant's alleged breach of contract, Plaintiff has also raised a genuine issue of material fact as to Defendant's alleged violation of MDWPCL. Moreover, if Defendant is found to have "withheld the wage of [Plaintiff] in violation of this subtitle and not as a result of a bona fide dispute," the MDWPCL allows for an award of "an amount not exceeding three times the wage, and reasonable counsel fees and other costs." Id. at § 3-507.2(b)(1).

### C. Count Three:  Claim for Declaratory Judgment that Post-Employment Contractual Obligations are Unenforceable

Plaintiff's Amended Complaint also seeks declaratory judgment that, because Defendant allegedly breached the Agreement, Plaintiff is no longer bound by the confidentiality, nonsolicitation, and noncompetition provisions of the Agreement.  First, Plaintiff argues that Defendant's alleged breach of contract automatically frees Plaintiff from the Agreement's post-employment obligations.  The only legal authority Plaintiff cites for this proposition emerges from Ruhl v. F. A. Bartlett Tree Expert Co., where the Court of Appeals of Maryland opined that, if the trial court had found that the defendant had materially breached its contract by reducing plaintiff's compensation, and if the plaintiff had not "terminated the contract by his voluntary resignation," a "different legal situation might well have been presented."  245 Md. 118, 128 (1967).  Plaintiff presumes that the "different legal situation" would have meant Ruhl's release from his post-employment obligations.  In the instant case, however, although Defendant may be found to have materially breached the Agreement, nevertheless the fact does not change that Plaintiff terminated her own employment.  Thus the hypothetical situation posited in Ruhl, which in any event does not provide a legal precedent but only an intellectual proposition presented by the Court of Appeals to itself, does not exist in Phan's case.  Other than the Ruhl hypothetical, Plaintiff relies only on "the traditional maxim that he who seeks equity must do equity" in support of her argument. Pl. Br. Opp. 16.  This Court cannot conclude on the basis of this equitable maxim alone that Defendant "lacks clean hands to enforce its provisions."  Id.

Plaintiff also argues that Defendant's breach of contract constituted a constructive termination of Plaintiff's employment, and therefore relieves Plaintiff of residual contractual obligations.  Am. Compl. at ¶ 41.  Plaintiff argues that Maryland courts have found that "any

14

material change in duties or significant reduction in rank will constitute a constructive discharge which, <u>if unjustified</u>, is a breach of contract." Pl. Br. Opp. 16 (quoting <u>Weisman v. Connors</u>, 69 Md. App. 732, 743 (Md. Ct. Spec. App. 1987)). However, Plaintiff has not alleged a "material change in duties" during her tenure or "significant reduction in rank." Rather, Plaintiff brings a lawsuit against Defendant as a result of a dispute over salary and other wages. Maryland courts have found that an employee's resignation as a result of an employer's withholding of wages does not qualify as constructive discharge. <u>See</u> <u>Williams v. Maryland Glass Corp.</u>, 134 Md. 320, 331 (1919).

Moreover, Plaintiff has failed to demonstrate that, even if she had been constructively discharged, she would have been released from her post-employment commitments. Accordingly, with respect to her claim for declaratory judgment, Plaintiff has failed to state a claim for which relief can be granted, and Defendant's motion to dismiss this claim is granted.

## V.   CONCLUSION

For the foregoing reasons, Defendant's summary judgment motion with respect to Counts One and Two of the Amended Complaint is **DENIED**, and Defendant's motion to dismiss Count Three of the Amended Complaint is **GRANTED**. An accompanying Order shall issue today.


Date: 12/14/2011                                                             /s/ Robert B. Kugler
                                                                             ROBERT B. KUGLER
                                                                             United States District Judge